TIFFANY ZARLING,

        Plaintiff,

v.                                        Case No. 21-C-1013

VILLAGE OF WINNECONNE,

        Defendant.

## DECISION AND ORDER

      Plaintiff Tiffany Zarling brought this action against Defendant Village of Winneconne, alleging that the Village violated the Families First Coronavirus Response Act (FFCRA), Pub. L. No. 116-127, 134 Stat. 178 (2020), the Employee Paid Sick Leave Act (EPSLA), Pub. L. No. 116-127, § 5101, 134 Stat. 178, 195 (2020), and the Emergency Family Medical Leave Extension Act (EFMLEA), Pub. L. No. 116-127, § 3101, 134 Stat. 178, 189 (2020). Zarling alleges that the Village failed to provide her with the leave and pay required by the EPSLA and EFMLEA during her COVID-related absence and retaliated against her by terminating her employment because she attempted to exercise her rights under the FFCRA. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Before the Court are the parties cross-motions for summary judgment. For the following reasons, Plaintiff's motion will be denied and Defendant's motion will be granted-in-part and denied-in-part.

### BACKGROUND

      Zarling was employed as the police secretary/municipal court clerk for the Village of Winneconne from 2012 to 2020. Def.'s Additional Statement of Fact (DASOF) ¶ 5, Dkt. No. 28. In that role, Zarling spent about sixty percent of her time working as the municipal clerk and about forty percent of her time as the secretary of the police department. Pl.'s Proposed Findings of Fact

(PPFOF) ¶ 3, Dkt. No. 16. As the police secretary, Zarling was primarily responsible for (1) answering phone calls and assessing what the calls were about and who should be notified; (2) communicating with police officers as to where they were needed; (3) compiling police reports and sending them to the Winnebago County District Attorney's Office; and (4) processing parking ticket payments.[1] DASOF ¶ 9. Zarling executed these duties Monday through Friday, from 8:00 a.m. to 4:30 p.m. *Id.* at ¶ 10.

On March 18, 2020, as concern over COVID-19 took hold of the nation, President Trump signed the FFCRA into law. *See* Pub. L. No. 116-127, 134 Stat. 178 (2020). The FFCRA included the EPSLA and the EFMLEA, and was in effect from April 2, 2020, to December 31, 2020. *Id.* In general, the FFCRA obligated employers to offer sick leave and emergency family leave to employees who were unable to work because of the pandemic. *See New York v. United States Dep't of Labor*, 477 F. Supp. 3d 1, 5 (S.D.N.Y. 2020). The EPSLA required "covered employers to provide paid sick leave to employees with one of six qualifying COVID-19-related conditions," and the EFMLEA entitled employees who were unable to work because they needed to "care for a dependent child due to COVID-19 to paid leave for a term of several weeks." *Id.* Importantly, both the EPSLA and EFMLEA provide that "an employer of an employee who is a health care provider or an emergency responder may elect to exclude such employee from the application" of their respective provisions. FFCRA §§ 3105, 5102(a).

After reading the FFCRA and its pertinent provisions, Village of Winneconne Administrator David Porter determined that the Village was subject to the EPSLA and the EFMLEA, and further concluded that both provisions allowed employers to exclude "emergency

---

[1] Zarling's job description also states that the police secretary is expected to "dispatch officers as needed, enter data into records systems, review reports for accuracy, maintain security of public records, record and type reports, conduct timely submission for mandatory reports, [and] liaison with the Winnebago District Attorney's Office for crime reporting and document transfer." Dkt. No. 21-4 at 1.

2

Case 1:21-cv-01013-WCG   Filed 08/18/22   Page 2 of 10   Document 44

responders" from their requirements. DASOF ¶ 43. Porter then drafted two policies to implement the EPSLA and the EFMLEA. *Id.* at ¶¶ 50–52. Relevant here is the second policy—the "Public Health Emergency Sick Leave Policy for Emergency Responders." *Id.* at ¶ 52. That policy, which was effective from April 1, 2020, to December 31, 2020, designated "[a]ll employees of the Winneconne Police Department" as "emergency responders." *Id.* Accordingly, the Village considered Zarling, as police secretary, to be an "emergency responder" for the purposes of its own policies and the EPSLA and EFMLEA. PPFOF ¶ 33.

A week prior to the FFCRA's enactment, on March 23, 2020, Zarling reported symptoms consistent with COVID-19 and was directed to quarantine for two weeks, in accordance with the Village's "COVID-19 Preparedness and Response Plan." DASOF ¶ 49. The Village expected Zarling to return to work on April 7, 2020. *Id.* On April 3, 2020, in anticipation of Zarling's return to work, Porter sent Zarling a "welcome back" email that described the policy he was drafting to implement the EPSLA and the EFMLEA. *Id.* at ¶ 59. The email indicated that the policy would exclude all employees of the Winneconne Police Department from the requirements of the EPSLA and the EFMLEA, and that, as an employee who worked for a facility that employs law enforcement officers and whose work was necessary to maintain the operation of the facility, Zarling would be considered an "emergency responder." *Id.* at ¶ 60.

Zarling responded to Porter's email the same day and informed him that, because her child's daycare center had closed, she would not return to work on April 7, 2020. *Id.* at ¶ 65. A few days later, on April 6, 2020, Porter spoke with Zarling via telephone and told her how critical she was to the functioning of the police department and that the two weeks when she was quarantining had proven to be quite challenging. *Id.* at ¶ 67. During the call, Porter again informed Zarling that she had been classified as an "emergency responder" and offered to provide her with a letter for daycare providers that indicated her designation as such. *Id.* at ¶ 68. On April 7, 2020,

3

Zarling sent an email to Porter and confirmed that she would not return to work that day. *Id.* at ¶ 71. Porter and Zarling then spoke again via telephone, during which Porter extended Zarling's leave to April 9, 2020, to allow her additional time to arrange for childcare. *Id.* at ¶ 72. At some point on April 7, 2020, Zarling formally requested leave under the FFCRA to care for her son due to the daycare closure, but Porter again informed Zarling that she was ineligible for such leave because she had been designated as an "emergency responder." PPFOF ¶ 39.

The next day, April 8, 2020, Zarling informed Porter that she would not return to work due to the closure of her child's daycare and further stated that she disagreed with her classification as an "emergency responder." DASOF ¶ 74. Zarling did not return to work on April 9, 2020, and in accordance with § 7.02(b)(6) of the Village of Winneconne Personnel Policy Handbook[2], was presumed to have resigned her employment with the Village. *Id.* at ¶ 73. She commenced this action against the Village on August 30, 2021. Dkt. No. 1.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the

---

[2] That section of the handbook reads, "[a]n employee who fails to report at the end of the unpaid leave or pre-agreed upon date is presumed to have resigned." Dkt. No. 21-13 at 2. Zarling denies that she resigned her employment. *See* Resp. to DASOF ¶ 78, Dkt. No. 42; PPFOF ¶ 40.

4

material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Classification as an "Emergency Responder"

The primary issue in the parties' cross-motions for summary judgment is whether Zarling, as police secretary for the Village of Winneconne Police Department, was properly classified as an "emergency responder" for the purposes of the EPSLA and the EFMLEA. In this case, if Zarling is found not to be an "emergency responder," the EPSLA would have required the Village to provide paid sick leave to Zarling because she was caring for her child whose "place of care" had been closed due to COVID-19 precautions. FFCRA § 5102(a)(5). And the EFMLEA would have required the Village to "provide expanded paid family and medical leave" to Zarling because she was caring for her child "whose school or place of care" was closed due to a public health emergency. *Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. 19,326, 19,327 (April 6, 2020).

But recall that the EPSLA and EFMLEA provide that "an employer of an employee who is a health care provider or an emergency responder may elect to exclude such employee from the application" of either. FFCRA §§ 3105, 5102(a). Notably, the FFCRA gives the Secretary of Labor the authority to "issue regulations for good cause . . . to exclude certain health care providers and emergency responders from the definition of employee under section 5110(1) including by allowing the employer of such health care providers and emergency responders to opt out." FFCRA § 5111(1). The Department of Labor defined "emergency responders" as follows:

> For the purposes of Employees who may be excluded from Paid Sick Leave or Expanded Family and Medical Leave by their Employer under the FFCRA, an

5

> emergency responder is anyone necessary for the provision of transport, care, healthcare, comfort and nutrition of such patients, or others needed for the response to COVID-19. This includes but is not limited to military or national guard, *law enforcement officers*, correctional institution personnel, fire fighters, emergency medical services personnel, physicians, nurses, public health personnel, emergency medical technicians, paramedics, emergency management personnel, 911 operators, child welfare workers and service providers, public works personnel, and persons with skills or training in operating specialized equipment or other skills needed to provide aid in a declared emergency, *as well as individuals who work for such facilities employing these individuals and whose work is necessary to maintain the operation of the facility*.

29 C.F.R. § 826.30(c)(2)(i) (emphasis added). Furthermore, the Department of Labor explained that

> The authority for employers to exempt emergency responders is reflective of a balance struck by the FFCRA. On the one hand, the FFCRA provides for paid sick leave and expanded family and medical leave so employees will not be forced to choose between their paychecks and the individual and public health measures necessary to combat COVID-19. On the other hand, providing paid sick leave or expanded family and medical leave does not come at the expense of fully staffing the necessary functions of society, including the functions of emergency responders. The FFRCA should be read to complement—and not detract from—the work being done on the front lines to treat COVID-19 patients, prevent the spread of COVID-19, and simultaneously keep Americans safe and with access to essential services. Therefore, the Department interprets "emergency responder" broadly.

*Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. at 19,335. In interpreting the term "emergency responders" broadly, the Department intended to include those employees who, among other things, "ensure the welfare and safety of our communities and of our Nation" and "provide essential services relevant to the American people's health and wellbeing." *Id.* The Department further noted that, though it endeavored to identify the categories of these workers, it was cognizant that no list could be "fully inclusive or account for the differing needs of specific communities." *Id.*

Given the broad interpretation of the term "emergency responders" the Department has adopted, it would seem reasonable to conclude that some deference should be afforded to the employers called upon to decide whether their employees should be exempted under the Act. The

6

Act appears to be silent, however, on what the standard of review is for a determination by an employer that a particular employee is necessary to carry out its emergency response duties. Absent argument or authority to the contrary, the Court will assume that its review is de novo. Applying these principles to the facts of this case, the question is whether Zarling, as an individual who worked for a facility employing law enforcement officers, performed work that was "necessary to maintain the operation of the facility," such that she could be properly considered an "emergency responder." *See* 29 C.F.R. § 826.30(c)(2)(i). For her part, Zarling asserts that her duties as police secretary were purely clerical in nature and were not necessary to maintain the operation of the Winneconne Police Department. The Village, on the other hand, contends that Zarling's duties were far more than clerical and included relaying emergency phone calls to officers—an essential component of a functioning police department.

Whatever merit these arguments may have, it is clear from the parties' submissions that there are several genuine disputes of material fact related to whether Zarling performed work that was necessary to maintain operation of the Winneconne Police Department. The parties dispute, among other things, (1) the nature of Zarling's job duties, including whether they were purely clerical or involved greater responsibility, Resp. to DASOF ¶ 9; (2) the actual tasks performed by Zarling, including whether and how frequently she dispatched officers for emergency and non-emergency calls, *id.* at ¶¶ 10, 35; (3) whether her absence from the role, both during her COVID-related absence and prior unrelated absences, affected the operations of the Police Department, *id.* at ¶ 63; Resp. to PPFOF ¶¶ 12, 15, Dkt. No. 29; and (4) whether emergency and non-emergency call volume increased during the pandemic such that her absence adversely affected the operations of the Police Department. Resp. to DASOF ¶ 64. Each of these disputed material facts bears upon whether Zarling's work was necessary to maintain operation of the Winneconne Police

7

Case 1:21-cv-01013-WCG   Filed 08/18/22   Page 7 of 10   Document 44

Department and, therefore, whether she was properly classified as an "emergency responder." The resolution of these disputed facts must be left to a trier of fact.

While this allows Zarling's first cause of action identified in her complaint to proceed, it does not necessarily follow that her second cause of action, retaliatory termination in violation of the EPSLA, must also proceed. The Village argues that Zarling has failed to present "evidence to support the allegation that the Village retaliated against Zarling because she attempted 'to take covered sick leave.'" Dkt. No. 27 at 18. Zarling has not responded to this argument and the Court cannot locate any evidence in the record to support the allegation that, whether called a termination or resignation, her discharge from the Village was in any way retaliatory. Zarling's second cause of action will therefore be dismissed.

### B. Whether Zarling May Bring a Claim Under the EFMLEA

Next, the Village argues that Zarling does not have a private right of action under the EFMLEA. 29 C.F.R. § 826.151(b) provides that "an Eligible Employee may file a private action to enforce the EFMLEA only if the Employer is otherwise subject to the FMLA in the absence of EFMLEA." The Village asserts that, because it employs less than fifty employees, it is not "otherwise subject to the FMLA." *See* 29 U.S.C. § 2611(2)(B)(ii) (noting that the term "eligible employee" does not include "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees."). There are several problems with this argument.

First, the threshold of fifty employees only determines whether the *employee* is eligible under the FMLA; it does not determine whether the employer is otherwise subject to the FMLA. Second, even considering the fifty-employee threshold, the FFCRA altered the definition of "eligible employee" for purposes of the EFMLEA:

> "(a) DEFINITIONS.—The following shall apply with respect to leave under section 102(a)(1)(F):

8

> "(1) APPLICATION OF CERTAIN TERMS.—The definitions in section 101 shall apply, except as follows:
>
> > "(A) ELIGIBLE EMPLOYEE.—In lieu of the definition in sections 101(2)(A) and 101(2)(B)(ii), the term 'eligible employee' means an employee who has been employed for at least 30 calendar days by the employer with respect to whom leave is requested under section 102(a)(1)(F).

FFCRA § 110. Therefore, Zarling is an eligible employee for purposes of the EFMLEA. This does not, however, resolve whether the Village is "otherwise subject to the FMLA in the absence of EFMLEA."

The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees." 29 U.S.C. § 2611(4)(A)(i). The term also includes "any 'public agency', as defined in section 203(x) of this title." 29 U.S.C. § 2611(4)(A)(iii). Section 203(x) defines "public agency" to include "the government of a State or political subdivision thereof." 29 U.S.C. § 203(x). Furthermore, the regulations accompanying the FMLA make clear that "[p]ublic agencies are covered employers without regard to the number of employees employed." 29 C.F.R. § 825.104(a). Therefore, because the Village is a "political subdivision" of a State, and because public agencies are covered employers regardless of the number of employees they employ, the Village is "otherwise subject" to the FMLA.

The Village points to sweeping language found in the Federal Register, which states that "an employee can only bring an action against an employer under the EFMLEA if the employer has had 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year, as required by section 101(4)(A)(i) of the FMLA." *Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. at 19,340. But that passage merely restates the requirements of 29 U.S.C. § 2611(4)(A)(i), and the Court has already explained that public agencies, such as the Village, are "covered employers without regard

9

to the number of employees employed." 29 C.F.R. § 825.104(a). Thus, Zarling has a private cause of action under the EFMLEA.

As was the case above, however, while this allows Zarling's third cause of action to proceed, it does not automatically ensure her fourth cause of action also proceeds. The Village again argues that Zarling has failed to present evidence to show that her resignation/termination was retaliatory. And again, Zarling has failed to respond to the Village's argument and the Court cannot locate any evidence in the record that supports the allegation that her discharge was retaliatory. Therefore, Zarling's fourth cause of action will be dismissed.

## CONCLUSION

For the foregoing reasons, Zarling's motion for summary judgment (Dkt. No. 13) is **DENIED** and the Village's motion for summary judgment (Dkt. No. 17) is **GRANTED-IN–PART** and **DENIED-IN-PART**. The Court concludes that there are genuine disputes of material fact with respect to whether Zarling was properly classified as an "emergency responder" under the EPSLA and EFMLEA. Zarling's first and third causes of action may proceed. Her second and fourth causes of action, however, are dismissed. The Clerk is directed to set this matter on the Court's calendar for a telephone scheduling conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 18th day of August, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge